UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARA I. FLORENCIANI,<br><br>              Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No. C20-1869 RAJ<br><br>**ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff appeals the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred in assessing her testimony and several medical opinions. Dkt. 12. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is 51 years old, has a high school education, and has worked as a small parts assembler. Dkt. 10, Admin. Transcript (Tr.) 32, 48. Plaintiff applied for benefits in December 2017, and alleges disability as of April 20, 2018. Tr. 15. After the ALJ conducted a hearing in October 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15-33, 44-75.

In pertinent part, the ALJ found that, with her severe impairments of fibromyalgia,

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

gastroparesis, depressive disorder, and anxiety disorder, Plaintiff had the residual functional capacity (RFC) to perform simple, medium-exertion work without teamwork and with only casual public interaction. Tr. 17, 20.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

### A. Plaintiff's Testimony

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

Plaintiff contends the ALJ erred by rejecting her mental symptom testimony of self-isolating, crying spells, panic attacks, and periodic neglect of personal hygiene. The ALJ discounted Plaintiff's mental symptom testimony because she improved with treatment, situational stressors accounted for some symptoms, objective medical evidence contradicted her testimony, and her activities were inconsistent with her testimony. Tr. 25-28.

### 1. Improvement with Treatment

Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, as the Commissioner acknowledges, Plaintiff showed only "some improvement" in her symptoms. Dkt. 14 at 8. Evidence the ALJ cited, such as that Plaintiff experienced "reduced intensity of crying spells" or that she is "trying" to put coping skills into practice, does not show effective control of symptoms. Tr. 512; *see also* Tr. 519

(Plaintiff is "not crying as much and has had some good days"). Improvement with treatment was not a clear and convincing reason to discount Plaintiff's testimony.

### 2. Situational Stressors

The ALJ found that, because therapy notes "focus[ed] on stressors," Plaintiff's symptoms have a "situational component." Tr. 25. However, providers assessed Plaintiff with "[s]erious [i]mpairment" in function, even while she was facing only a "[m]ildly [s]tressful [e]nvironment" with a high level of support. Tr. 501. Because pleasant activities like caring for a neighbor's dog for a few days or watching Netflix appeared to temporarily lift Plaintiff's mood, the ALJ speculated that Plaintiff might benefit from "diversion" in the form of "non-stressful routine work activities." Tr. 25. However, Plaintiff continued to present with serious symptoms. Tr. 591, 605 ("dysphoric mood" even after watching dog or Netflix). The ALJ's finding was not supported by substantial evidence. This was not a clear and convincing reason to discount Plaintiff's testimony.

### 3. Objective Medical Evidence

"Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). However, mere "lack of medical evidence cannot form the sole basis for discounting pain testimony[.]" *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ found Plaintiff had largely normal mental status examination results except for "depressed or anxious mood/affect or tearfulness at times." Tr. 26. The ALJ cited clinical findings such as cooperative demeanor, good eye contact, and normal speech, but failed to explain how they contradicted Plaintiff's testimony. *Id*. No such contradiction is apparent. Plaintiff did not, for example, testify that she became combative or could not make eye contact, which would be contradicted by these clinical findings. In fact, the medical evidence of frequent tearfulness supports Plaintiff's testimony of daily crying spells.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

In Function Reports, Plaintiff stated she does not handle stress well because she gets "anxiety and panic attacks." Tr. 295, 315. The ALJ found this inconsistent with an incident where Plaintiff appeared at a medical appointment nearly an hour late due to going to the wrong clinic first and getting lost, yet had normal mental status except for being tearful, depressed, anxious, and with flat affect. Tr. 26. Consistent with her reports, Plaintiff was anxious. That she did not suffer a panic attack on this one occasion was not a clear and convincing reason to discount her testimony.

In Function Reports, Plaintiff checked boxes indicating "[c]oncentration" and "[m]emory" were among the functions affected by her conditions. Tr. 294. A mental status examination stated Plaintiff had "[n]o overt impairment of memory" and normal concentration. Tr. 503. Plaintiff does not contend she has memory or concentration deficits, but that her physical and mental impairments affect her memory and concentration. *See* Tr. 294 ("with the conditions I have [there] is not much I can do of anything"). Thus, the clinical findings did not contradict her testimony.

The ALJ did provide clear and convincing reasons to discount Plaintiff's testimony of periodic poor grooming. Plaintiff testified she used to do her nails, but had not been able to since the April 2018 alleged onset date. Tr. 63. However, in June 2019, a provider noted Plaintiff "always has her nails done, she does them herself." Tr. 597. Providers consistently described Plaintiff as normally groomed, contradicting her testimony that on days her depression was worse she did not take care of her personal hygiene. Tr. 60; *see, e.g.*, Tr. 512, 516, 609. Plaintiff argues she would cancel appointments on such days. Dkt. 15 at 4. However, she testified she did not usually cancel appointments when her depression was more severe. She canceled only "[s]ometimes when [she was] really bad" but "tr[ied] not to so that way they can see" her condition. Tr. 60-61. Plaintiff testified her depression was more severe "three [or] four days a week." Tr. 59. Given this frequency, and that cancellations were rare, the ALJ reasonably concluded providers' consistent observations of normal grooming contradicted Plaintiff's testimony.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

Conflict with medical evidence was a clear and convincing reason to discount Plaintiff's testimony regarding poor hygiene, but not her remaining testimony.

4. **Activities**

The ALJ found Plaintiff's ability to take two trips to visit family in Puerto Rico contradicted her testimony she must avoid people and stressful situations. Tr. 27. Plaintiff contends the ALJ failed to consider "accommodations which could be made on the airplane and in the airport for the Plaintiff." Dkt. 12 at 8. The record contains no evidence of such accommodations, as Plaintiff acknowledges. *Id*. Plaintiff cites *Tackett v. Apfel*, where the Ninth Circuit held the ALJ erred in finding the claimant's road trip to California was substantial evidence he could sit for two hours at a time, because there was no evidence as to how much the claimant drove or was able to recline while his fiancé drove, or the length or frequency of rest stops. 180 F.3d 1094, 1103 (9th Cir. 1999). Long-distance flights, however, do not allow the same flexibility as road trips. Without evidence of special, unusual accommodations, the ALJ reasonably inferred Plaintiff's experience of long-distance flights was typical, involving several hours of proximity to and interaction with strangers. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").

Plaintiff points to her testimony that she was still having frequent crying spells and bad days three or four days a week during her visits to Puerto Rico. Tr. 59. But this was the same frequency as when she stayed home. *Id.* Plaintiff has shown no error in the ALJ's finding that the ability to travel contradicted Plaintiff's testimony of self-isolation.

The ALJ also cited Plaintiff's ability to take buses. Tr. 27. Plaintiff testified she takes a bus to some of her medical appointments. Tr. 55. However, treatment records reveal Plaintiff "has to get off the bus sometimes due to anxiety." Tr. 568; *see also* Tr. 558-59 (appointments cancelled "due to anxiety" or "being sick"). This activity was not a clear and convincing reason to discount Plaintiff's testimony.

The Court concludes the ALJ erred by discounting Plaintiff's testimony of daily crying spells, anxiety, and panic attacks, but did not err by discounting Plaintiff's testimony of extreme self-isolation and periodic poor grooming.

B.   Medical Opinions

The ALJ must articulate and explain the persuasiveness of an opinion or prior finding based on "supportability" and "consistency," the two most important factors in the evaluation. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at (c)(1)-(2). The Court must, moreover, consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

### 1.   Roni Friang and Nipali Bharani, M.D.[1]

Ms. Friang and Dr. Bharani opined Plaintiff had marked or extreme limitations in all work-related mental abilities because she "cannot maintain consistent routines." Tr. 590-92. The ALJ found these opinions unpersuasive as inconsistent with largely normal mental status findings and Plaintiff's activities. Tr. 30-31.

An ALJ may discount a medical opinion that is contradicted by the medical evidence. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Here, the ALJ found mental status examination results "largely benign." Tr. 30. The ALJ's finding was not supported by substantial evidence. Plaintiff consistently presented as dysphoric, depressed, and anxious, and was frequently tearful. *See, e.g.*, Tr. 499 ("softly sobbed most of the intake" session), 568, 598 ("typically crying throughout the session"), 621,

---

[1] Some of Plaintiff's briefing, and the assessment form the providers filled out, erroneously refer to Dr. Bharani as "Dr. Nipail." *See, e.g.*, Tr. 589.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

632-33. She showed abnormal behaviors such as "anxiety picking at her fingernails/toenails." Tr. 633; *see also* Tr. 600 ("Picking at her nails"). Her thought processes had "some circumstantiality." *See, e.g.*, Tr. 613, 633. The ALJ pointed to findings such as normal psychomotor activity and cognition, but failed to explain how these contradicted Ms. Friang's and Dr. Bharani's opinions of inability to maintain routines. The medical providers were better suited than the ALJ to interpret the mix of abnormal and normal findings. *Cf. Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ, "who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition."). The ALJ thus erred in rejecting Ms. Friang's and Dr. Bharani's opinions as contradicted by the medical evidence.

Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ found Plaintiff's ability to travel locally and to Puerto Rico, apply for and obtain benefits and counseling, shop, and perform self-care inconsistent with Ms. Friang's and Dr. Bharani's opinions. Tr. 31. None of these activities require a daily full-time routine, and thus do not conflict with the providers' opinions that Plaintiff cannot maintain consistent routines. The Commissioner emphasizes Plaintiff's ability to arrange for counseling and points to a provider's comment that Plaintiff appears to have been "resourceful during her lifetime in accessing resources to meet her needs." Tr. 566. This comment, made in the context of discussing Plaintiff's "psychiatric and medical history," appears to have little bearing on the relevant period and is, in any case, of unclear import. *Id*. Nothing in the record suggests it was difficult to obtain or engage in counseling. Conflict with Plaintiff's activities was not a valid reason to discount Ms. Friang's and Dr. Bharani's opinions.

The Court concludes the ALJ erred by discounting Ms. Friang's and Dr. Bharani's opinions.

### 2. David Widlan, Ph.D.

Dr. Widlan examined Plaintiff in August 2018 and opined she was "not capable of maintaining persistence and adequate pace" because she "would become easily overwhelmed [and] struggle with task completion." Tr. 485. The ALJ found Dr. Widlan's opinions unpersuasive because the information underlying his opinions was unreliable, and his opinions were inconsistent with the medical evidence and Plaintiff's activities. Tr. 30.

The ALJ found Dr. Widlan's "abnormal findings … were not typical." Tr. 26. The ALJ pointed to Dr. Widlan's findings that Plaintiff "remembered one of three items after a five-minute delay, could not perform serial-seven subtractions, and did not appear to be able to comprehend an abstract saying." Tr. 26. But these tests were not performed elsewhere in the record. The Commissioner points to a treatment note finding "[n]o overt impairment of memory," but that is not the same as a clinical test specifically designed to elicit subtle memory deficits. Tr. 503. Similarly, the Commissioner points to an impression, not based on a specific test, of "good" insight and judgment during an appointment regarding fibromyalgia. Tr. 578. And "intact" attention span and concentration in a screening for neurological abnormalities does not conflict with specialized serial-subtraction tests of concentration. Tr. 583. The ALJ's finding that Dr. Widlan's clinical observations were unreliable was not supported by substantial evidence.

An ALJ may discount a medical opinion based heavily on a claimant's unreliable self-reports. *Ghanim*, 763 F.3d at 1162. "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* And an ALJ does not provide sufficient reason for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).

Here, the ALJ discounted Dr. Widlan's opinions because he relied on the statements of Plaintiff and her son.[2] Tr. 26. Dr. Widlan received no treatment records, only a form completed by Plaintiff's son. Tr. 482. However, the ALJ identified no evidence that Dr. Widlan relied heavily on Plaintiff's son's statement. In fact, as the ALJ pointed out, Plaintiff's son's statement dealt almost entirely with Plaintiff's physical symptoms, which Dr. Widlan did not address. Tr. 30; *see* Tr. 277-84. The ALJ also identified no evidence supporting the finding that Dr. Widlan relied heavily on Plaintiff's self-reports. In fact, Dr. Widlan observed extensive clinical abnormalities, in attitude and behavior, mood and affect, abstract thinking, and fund of knowledge. Tr. 483-84. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Reliance on Plaintiff's and her son's statements was not a valid reason to discount Dr. Widlan's opinions.

The ALJ found Dr. Widlan's opinions inconsistent with Plaintiff's ability to travel to Puerto Rico, obtain benefits and counseling, drive, take public transportation, and attend appointments promptly. Tr. 30. The Commissioner argues these activities are inconsistent with inability to maintain persistence and pace. Dkt. 14 at 15. But the Commissioner fails to explain how. None of these activities require full-day persistence and pace. While airline flights can be long, a passenger need not do anything once she has boarded. Conflict with Plaintiff's activities was not a valid reason to discount Dr. Widlan's opinions.

The Commissioner argues Plaintiff's report to Dr. Widlan that she cannot concentrate long enough to watch a movie was inconsistent with her report she watches

---

[2] Plaintiff does not challenge the ALJ's discounting of her son's statement.

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

YouTube on the bus to distract her from panicking. Dkt. 14 at 14. This is a *post hoc* argument on which the Court cannot rely. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). Moreover, there is no indication Plaintiff watched full-length movies on YouTube.

The Commissioner's argument that Plaintiff's ability to complete the clinical interview contradicts Dr. Widlan's opinion of difficulty maintaining persistence and pace is *post hoc* as well as illogical, as clinical interviews are designed for people with mental impairments. Dkt. 14 at 14-15.

The Court concludes the ALJ erred by discounting Dr. Widlan's opinions.

### 3. Global Assessment of Functioning (GAF) Scores

The ALJ found Dr. Widlan's assignment of a GAF score of 45, and Dr. Bharani's and Ms. Friang's GAF score of 35, unpersuasive because GAF scores are a snapshot, consider secondary factors such as finances, and rely heavily on a patient's self-report. Tr. 31. This reasoning generally accords with the reasoning of the American Psychiatric Association, which dropped the GAF score from its *Diagnostic and Statistical Manual of Mental Disorders* because it lacked clarity and had questionable value in routine practice. *See Golden v. Shulkin*, 29 Vet. App. 221, 224 (Vet. App. 2018). The Court thus finds no error in the ALJ's rejection of GAF scores here.

### 4. Renee Eisenhauer, Ph.D.

On reconsideration of Plaintiff's applications, Dr. Eisenhauer opined Plaintiff could perform simple, routine work with superficial coworker and supervisor interaction and no significant public contact. Tr. 115-17, 129-31. The ALJ found these opinions "persuasive" and incorporated them into the RFC. Tr. 20, 29. Plaintiff argues the ALJ misinterpreted the opinions.

Dr. Eisenhauer opined Plaintiff was "[m]oderately limited" in the ability to "interact appropriately with the general public," further explaining Plaintiff was capable of work that "does not require significant public contact." Tr. 117. Plaintiff interprets

this as showing that Dr. Eisenhauer used "moderate" to mean a limitation that "precludes the activity most of the time," and then applies that interpretation to Dr. Eisenhauer's other opined moderate limitations in maintaining punctual attendance, maintaining concentration, and completing a normal work day and week. Dkt. 12 at 12. Plaintiff's argument that anything less than "significant" equates to being precluded most of the time is unpersuasive. Moreover, even if Plaintiff's strained interpretation of Dr. Eisenhauer's opinions were rational, the Court must uphold the ALJ's rational interpretation. *See Burch*, 400 F.3d at 680-81 (when evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational). The ALJ reasonably relied on Dr. Eisenhauer's narrative explanations of her opined limitations. Dr. Eisenhauer explained that, even with moderate limitations in extended concentration, maintaining punctual attendance, and completing a work day and week, Plaintiff was "capable of understanding, remembering, and carrying out simple tasks" in full-time work. Tr. 116, 130.

The Court concludes Plaintiff has shown no error in the ALJ's interpretation of Dr. Eisenhauer's opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's testimony and the opinions of Ms. Friang, Dr. Bharani, and Dr. Widlan; reassess the RFC as appropriate; and proceed to steps four and five as necessary.

DATED this 6th day of July, 2021.

The Honorable Richard A. Jones
United States District Judge